## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

VICTOR ALLEN MARTIN,       )
                                         )
               Petitioner,    )
                                         )
        vs.             )     Case No. CIV-09-632-W
                                         )
MICHAEL ADDISON, Warden,  )
                                         )
           Respondent.   )

## REPORT AND RECOMMENDATION

       Petitioner, a state prisoner appearing pro se, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition and filed the state court trial transcript (Tr.) and the Original Record (O.R.). Petitioner has not filed a reply within the relevant time period, and the matter is at issue. For the following reasons, it is recommended that the petition be denied.

## I.  Procedural History

       Petitioner was convicted after a jury trial of possession of a controlled dangerous substance (methamphetamine) with intent to distribute after two or more felony convictions (Count One); possession of a controlled dangerous substance (methamphetamine) without tax stamp affixed after two or more felony convictions (Count Two); possession of marijuana, second and subsequent offense (Count Three); and the misdemeanor crime of

unlawful possession of drug paraphernalia (Count Four) in the District Court of Payne County, Case No. CF-2005-852. *See* Response, Ex. 3 (*Martin v. Oklahoma*, Case No. F-2007-269). Petitioner was sentenced to eighty-five years imprisonment on Count One, eighty-five years imprisonment on Count Two, ten years imprisonment on Count Three, and one year imprisonment in the county jail on Count Four, all sentences to be served concurrently. *Id.*

Petitioner filed a direct appeal, raising six grounds for relief. Response, Ex. 1. The Oklahoma Court of Criminal Appeals (OCCA) affirmed Petitioner's convictions and sentences on Counts One, Three, and Four but reversed and dismissed the conviction for Count Two - possession of methamphetamine without tax stamp affixed after former conviction of two or more felonies.[1] Response, Ex. 3.

Petitioner sought post-conviction relief in the state district court, alleging ineffective assistance of appellate counsel for (1) failure to allege that trial counsel was ineffective for failing to call alibi witnesses for Petitioner and (2) failure to argue that Petitioner's sentences were excessive. Petition, p. 3 and attached copy of Application for Post-Conviction Relief, Case No. CF-2005-852, pp. 2-5. The district court denied post-conviction relief. Response, Ex. 4. On appeal the OCCA affirmed the denial. Response, Ex. 6.

---

[1]In reversing this conviction, the OCCA found that the State's evidence did not establish that Petitioner possessed at least seven grams of methamphetamine - the requisite amount requiring a tax stamp. Response, Ex. 3, p. 2.

## II. Factual Background

On October 26, 2005, Payne County Deputy Sheriff Paul Fox, assisted by Deputy Sheriff Chris Nixon, executed a search warrant on the residence at 1304 ½ South Fern Street in Stillwater, Oklahoma. Tr.Vol. I, pp. 83, 85-86. In the only bedroom in the residence, Deputy Fox found two ziplock baggies each containing a crystal substance which tested positive for methamphetamine; ziplock bags containing methamphetamine residue; 281 empty ziplock baggies; digital scales; a spoon with residue; hypodermic needles; a container with cotton soaks (ends of Q-tips used together with a spoon and hypodermic needles to facilitate drug use); and baggies containing marijuana and marijuana seeds. *Id.*, pp. 92-95, 107-108, 110, 115, 117-118, 125-129. The deputies also found a spiral notebook and a sheet of paper which were identified at trial as drug ledgers. *Id.*, pp. 99-103. Deputy Fox testified further to the discovery of a payment book and mail addressed to Petitioner at the residence. 120-121, 126-127. Petitioner, who was present during the search, was arrested and charged with various drug related offenses.

## III. Petitioner's Claims

Petitioner raises five grounds for habeas relief. In Ground One, Petitioner argues that his due process and equal protection rights were violated when the OCCA denied his claim on direct appeal that the enhancement of his punishment on Counts One and Two was erroneous because the Information was constitutionally insufficient. Petition, p. 4. In Ground Two, Petitioner alleges there was insufficient evidence to sustain his conviction of possession of a controlled dangerous substance with intent to distribute. *Id.*, p. 6. In Ground

Three, Petitioner alleges that admission of other crimes evidence denied his right to a fair trial. *Id.*, p. 7. In Ground Four, Petitioner alleges that his trial counsel rendered ineffective assistance. *Id.*, p. 9. In Ground Five, Petitioner alleges that appellate counsel rendered ineffective assistance. *Id.*, p. 10-A.

## IV. <u>Standard Governing Habeas Review</u>

Because Petitioner's claims were denied by the OCCA on their merits, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the standard for this court's review of these claims. Under the AEDPA, habeas relief may be granted only if the state appellate court's adjudication of the merits of a federal claim has resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable.'") (citing *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362,

405-406 (2000). A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *See House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)), *cert. denied*, 129 S.Ct. 1345 (2009). Thus, the AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __U.S.__, 131 S.Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). The AEDPA further mandates that factual findings made by a state trial or appellate court are presumed correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## V. <u>Analysis</u>

### A. <u>Use of Prior Convictions for Sentence Enhancement - Ground One</u>

In Ground One, Petitioner contends that he was denied due process and equal protection when the OCCA rejected his claim on direct appeal that the sentences imposed on Counts One and Two were erroneously enhanced because the Information failed to provide adequate notice that he was being charged with prior convictions on those counts. Petition, pp. 4-4A.

Respondent asserts that Petitioner's claim with respect to the enhancement of the sentence imposed on Count Two is moot because that conviction was reversed and dismissed

on appeal. Response, p. 5. In response to Petitioner's challenge to the enhanced sentence regarding Count One, Respondent contends that such claim raises only a matter of state law which is not cognizable on federal habeas review. Response, pp. 5-8. For the following reasons, the undersigned recommends the denial of habeas relief on the claims raised in Ground One.

"A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, 2, of the Constitution." *Aragon v. Shanks*, 144 F.3d 690, 691 (10th Cir. 1998). For a petition to present a "case or controversy," the litigant must have suffered an actual injury which can "be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quotation and citation omitted). The record supports, and Petitioner does not dispute, Respondent's assertion that his conviction on Count Two (Possession of CDS [Methamphetamine] Without Tax Stamp Affixed) is no longer valid, having been reversed and dismissed by the OCCA. Response, Ex. 3, p. 5. Therefore, such conviction does not present an injury which can be redressed by this court, and Petitioner's claim in this regard should be denied as moot.

With respect to Petitioner's challenge to the enhancement of his sentence on Count One - Possession of CDS (Methamphetamine) with Intent to Distribute, contrary to Respondent's assertion that such claim raises only a state law issue, the undersigned finds that Petitioner's allegation regarding the deficiency of the Information adequately raises a

federal claim.[2]

"A charging instrument may violate the Sixth Amendment by failing to provide a defendant with adequate notice of the nature and cause of the accusations filed against him." *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999); *see also Parks v. Hargett*, No. 98-7068, 1999 WL 157431 (10th Cir. March 23, 1999) (unpublished op.) ("A defendant is entitled to fair notice of the criminal charges against him under the Sixth Amendment's right to a fair trial and the Fourteenth Amendment's guarantee of due process . . . .").

Noting Petitioner's failure to raise any objection to the Information and his agreement to the second-stage sentencing instructions, Response, Ex. 3, pp. 2-3 & n.3, the OCCA concluded that although the second page of the Information "could have been more specific," no plain error occurred because the record clearly showed that "[Petitioner] and his counsel understood that the State was charging him with the listed felony offenses (to which he stipulated) in order to enhance his sentences on Counts I and II." *Id.*, p. 3.

The record supports the OCCA's conclusion that the prior convictions listed on page two of the Information[3] "logically relate to the other counts susceptible of being enhanced

---

[2]To the extent, however, Petitioner is alleging the trial court lacked jurisdiction because the second page of the Information insufficiently met state law requirements, such claim is not cognizable in this habeas corpus action. *See* Response, Ex. 1, p. 11. *See also Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (federal habeas corpus relief does not lie unless there is a showing that "a conviction violated the Constitution, laws, or treaties of the United States"); *Johnson v. Gibson*, 169 F.3d 1239, 1251 (10th Cir 1999) ("insofar as petitioner challenges the adequacy of the information under Oklahoma law, this is a question of state law. On federal habeas review, we are not empowered to correct all errors of state law.").

[3]The original Information was filed on October 28, 2005, and the second page of that
(continued...)

by prior felonies, i.e., Counts I and II[,]" *id.,* p. 2 n.2, and that Petitioner "was adequately and fully informed that he was being AF2CF in relation to both Counts 1 and II." *Id.,* p. 2.[4]

After the jury returned guilty verdicts on all counts, the jury was instructed regarding the second stage of the trial. Instruction 29 provided:

> You are further instructed that in the second portion of the information, the defendant is charged with having committed the crimes charged in Counts 1, 2, and 3 after having been formerly convicted of two (2) or more felonies.

O.R. 106.

Petitioner did not object to this instruction. Likewise in his reading of the second page of the Information, the prosecutor specifically advised the jury that the charges on Counts One, Two and Three were all alleged to have been subsequent offenses after Petitioner's convictions of the offenses identified thereafter. Tr.Vol.II, pp. 121-123. Again, Petitioner did not object to the prosecutor's reading of the second page; rather, following this statement

---

[3](...continued)
Information identified four cases (including two counts in one case) in which Petitioner had been previously convicted of a felony. O.R. 2-4. An Amended Information was filed on October 11, 2006, the second page of which was identical to the second page of the original Information except that another prior conviction (in CF-1995-223) was added.

[4]Prior to listing Petitioner's alleged prior convictions, the second page of both the original Information and the Amended Information provided in relevant part:

> The State of Oklahoma further alleges that the charge of POSSESSION OF CONTROLLED DANGEROU (sic) SUBSTANCE - 2nd AND SUBSEQUENT - COUNT 3 made against the defendant, VICTOR ALLEN MARTIN, on the first page of this Information was a subsequent offense after said defendant was previously convicted of a violation of Title 47, OSA, Section 11-902, **or** Title 63 O.S. § 2-602 as follows . . . .

by the prosecutor, Petitioner stipulated to the five prior felonies alleged without objection to their use to enhance Counts One and Two, as well as Count Three. Tr.Vol.II, p. 124-125. Petitioner's failure to raise any objection to these statements and instructions to the jury, clearly demonstrates that Petitioner was well aware that he had been charged after former convictions on Counts 1 and 2 as well as Count 3. Thus, as the OCCA found, Petitioner fails to show that the Information was constitutionally inadequate, and he is not entitled to habeas relief on such claim.[5]

Accordingly, the undersigned finds that the OCCA's rejection of Petitioner's claims that his enhanced sentences were without notice and therefore unconstitutional was not contrary to, or an unreasonable application of, Supreme Court due process jurisprudence, and it is therefore recommended that habeas relief as to Petitioner's claims in Ground One be denied.[6]

### B. Sufficiency of the Evidence - Ground Two

In his second ground for habeas relief, Petitioner alleges that the evidence admitted

---

[5]In addition, the undersigned notes that the record includes a second Amended Information dated January 17, 2007, which was the second and last day of Petitioner's trial. O.R. 151-153. The second page of this second amended Information specifically alleges that the charges in Counts One, Two and Three were all committed after Petitioner had been previously convicted of the five listed prior convictions. *Id.*

[6]To the extent Petitioner's claim in Ground One alleges that his sentence on Count One, as enhanced by his prior convictions, is excessive, such claim fails to state a cognizable claim for habeas relief. Federal courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (citations omitted). Petitioner does not allege that the sentences imposed were in excess of that allowed by statute.

at trial was insufficient to sustain his conviction on Count One for possession of a controlled dangerous substance with intent to distribute. Petition, pp. 6-6A. Petitioner alleges that even though the State presented evidence that "there were drugs in the house, that drugs had been used in the house, and that someone may have sold drugs in the past from the house," the evidence failed to link Petitioner to the drugs in the house. *Id.*, p. 6 He also argues that the State failed to prove that the relatively small amount of drugs found at the house was "being held for sale, rather than personal use." *Id.*, pp. 6-6A.

On direct appeal, the OCCA rejected Petitioner's claim of insufficient evidence. Citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the OCCA found that "[t]he evidence presented during Martin's trial was sufficient to support his conviction . . . for possession of methamphetamine with intent to distribute." Response, Ex. 3, p. 3. The court specifically found that "[t]he evidence of numerous distribution-size baggies, the scale, and the drug ledgers was sufficient for the jury to reasonably infer that [Petitioner] was not merely a user of methamphetamine, but also intended to distribute it." *Id.*, n.4.

Under *Jackson,* judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at his trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard

"gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).

The elements of the offense of possession of methamphetamine with intent to distribute under Oklahoma law are:

1. Knowingly/Intentionally;

2. Possessing;

3. With intent to distribute;

4. The controlled dangerous substance of methamphetamine.

O.R. 136 (Instruction No. 18, OUJI-CR 6-2); *see also,* Okla. Stat. tit 63, § 2-401.

Oklahoma law provides that possession can be either actual or constructive and can be proven with circumstantial evidence. *White v. State*, 900 P.2d 982, 986 (Okla. Crim. App. 1995). Moreover, possession need not be exclusive, as long as there is evidence the accused knowingly shared the right to control the substance. *Id.* Although mere proximity to the contraband is insufficient to prove possession, *Staples v. State*, 528 P.2d 1131, 1133 (Okla. Crim. App. 1974), constructive possession "may be proven if there are additional

independent factors which show [the defendant's] knowledge and control of the drugs." *Carolina v. State*, 839 P.2d 663, 664-665 (Okla. Crim. App. 1992). "Such independent factors may include incriminating conduct by the accused or other circumstances from which possession may be fairly inferred." *Carolina*, 839 P.2d at 665 (citation omitted). *See* O.R. 141 (Instruction No. 23, OUJI-CR 6-11). Further, under Oklahoma law, "'[d]istribute' means to deliver other than by administering or dispensing a controlled dangerous substance[.]" Okla. Stat. tit. 63, § 2- 101(12). Thus, to be found guilty of possession with intent to distribute, it is enough that the defendant intends to divide, share or deliver the drugs with or without compensation. *See Goodner v. State*, 546 P.2d 653, 657 (Okla. Crim. App. 1976) (interpreting § 2-101(12) and stating, "It is abundantly clear from the ordinary and accepted meaning of the word 'distribute' that a distributor is not merely one who deals or sells, but that the term is synonymous with 'dividing' or 'sharing' or 'delivering,' with or without compensation.").

Based on the evidence presented at trial and in light of these essential elements of the offense, the undersigned finds that the OCCA's rejection of this claim of insufficiency of the evidence was neither contrary to nor an unreasonable application of *Jackson*. Deputy Paul Fox testified that based upon his investigation, he applied for and received a search warrant for the residence at 1304 ½ South Fern, which he had determined was Petitioner's residence. Tr.Vol.I, pp. 82-84. Fox testified that as he and Deputy Nixon drove up to the residence, he observed Petitioner coming from the residence to his pickup. *Id.*, p. 88. In his search of the only bedroom in the residence, Fox found baggies containing methamphetamine residue. *Id.*,

pp. 92, 94-95. Fox also found a spiral notebook, the back page of which had initials with fluctuating numbers beside them, and a single sheet of paper, with ten names and dollar amounts beside the names. *Id.*, pp. 99-103. Both the notebook and the single sheet were identified as drug ledgers by Fox based upon his experience and training. *Id.* In addition, Fox found two packages containing a crystal substance that tested positive for methamphetamine,[7] a digital scale located near 281 ziplock bags of various sizes including nearly fifty 1½ inch by 1½ inch baggies, a spoon with residue, and a package of twelve hypodermic needles and syringes. *Id.*, pp. 107-117. Two methamphetamine pipes with burnt residue, used hypodermic needles, and "cotton soaks" were found in a dresser in the bedroom. *Id.*, p. 122. Fox testified that based on his training and experience the large number of ziplock bags - two of which contained methamphetamine and eleven of which contained residue - and the digital scale indicated possession of illegal drugs with intent to distribute rather than mere possession of illegal drugs. *Id.*, p. 137.

Fox testified further that items of identification were found during the search which showed that Petitioner resided at the home. Specifically, Deputy Fox testified that in the bedroom he found an envelope from a storage company, two envelopes from CompSource, and a payment book, each addressed to Petitioner at 1304 ½ S. Fern in Stillwater, Oklahoma. Tr.Vol.I, 120-21, 126. Finally, Deputy Fox testified that Petitioner listed his residence on the arrest booking report and on his appearance bond as 1304½ South Fern. Tr.Vol.II, pp.

---

[7]The testimony of OSBI criminalist Mistie Burris established that each baggie contained .4 grams of methamphetamine. Tr.Vol.I, pp. 36-42.

37-43; *See also* O.R. 5-6 (Appearance Bond).

Taken in the light most favorable to the prosecution, the record supports the OCCA's finding that the evidence was sufficient to support Petitioner's conviction for possession of methamphetamine with intent to distribute. The OCCA's rejection of Petitioner's sufficiency of the evidence claim was therefore neither contrary to nor an unreasonable application of *Jackson*. Thus, it is recommended that habeas relief be denied as to Petitioner's sufficiency of the evidence claim in Ground Two.

### C. **Admission of Other Crimes Evidence - Ground Three**

Petitioner alleges in Ground Three that the admission of "other crimes evidence" deprived him of a fair trial. He asserts that "[t]he State failed to prove who possessed the drugs found[]" and "[b]y using other crimes evidence to tie the Petitioner to illegal drugs from prior convictions the prosecution improperly bolstered its circumstantial case." *Id.*, pp. 7-8A. Although the petition does not identify the evidence which Petitioner alleges was improperly admitted, this claim has been construed to challenge the same evidence challenged on direct appeal: (1) evidence that morphine pills were found in his home; (2) testimony that his truck was stopped one week prior to the search and that a drug dog alerted to his truck; (3) testimony elicited by the prosecutor during cross-examination of Petitioner; and (4) the prosecutor's suggestion that Petitioner was a career criminal and that his liver disease could have been caused by methamphetamine use. Response, Ex. 1, pp. 15-19 (Appellant's Brief on Appeal). Noting that Petitioner failed to object to the challenged evidence at trial, the OCCA reviewed for plain error and rejected this claim. Response, Ex.

3, pp. 3-4.

As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence. *See Estelle v McGuire*, 502 U.S. 62, 67-68 (1991); *see also Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) ("Generally speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief."). On habeas review, this Court can only review state court evidentiary rulings "'to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Hooker v. Mullin*, 293 F.3d 1232, 1238 (10th Cir. 2002) (quoting *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997)). Accordingly, the Tenth Circuit has held that a state court's admission of evidence of prior crimes, wrongs or acts should not be disturbed "unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies the defendant due process of law." *Hopkinson v. Shillinger*, 866 F.2d 1185, 1197 (10th Cir. 1989), *overruled on other grounds, Sawyer v. Smith*, 497 U.S. 227 (1990). The "[i]nquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner . . . ." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002). For the reasons set forth hereafter, the undersigned finds that the admission of the challenged prior bad acts did not render Petitioner's trial fundamentally unfair.

During the guilt phase of the trial, a criminalist with the Oklahoma State Bureau of Investigation (OSBI) testified that in testing the various substances found in Petitioner's

home, she determined that ten pills found in Petitioner's bedroom contained morphine. Tr.Vol.I, p. 34. On direct appeal, Petitioner argued that he was prejudiced by the introduction of evidence that morphine was found in the house, even though he was not charged for possession of the morphine. Response, Ex. 1, pp. 15-16. The OCCA found "[t]here was no plain error in the brief references to the pills, nor has [Petitioner] established that he was prejudiced thereby." Response, Ex. 3, p. 3.

The OCCA's findings and conclusions regarding this claim are supported by the record. The testimony about the ten morphine pills was isolated, brief, and presented in the context of describing the execution of the search warrant. Tr.Vol.I, pp. 34, 48. Moreover, Petitioner has failed to establish that such testimony was unduly prejudicial. As discussed *infra* in connection with Ground Two, there was substantial properly admitted evidence of drugs and drug paraphernalia found in Petitioner's possession that amply supported the jury's verdicts. The undersigned finds that Petitioner's trial was not rendered fundamentally unfair by the testimony regarding the morphine.

Petitioner also contends he was prejudiced when the prosecutor elicited testimony during the first stage of the trial that Petitioner had been subjected to a traffic stop one week prior to the search of the residence and that during the stop, a drug dog alerted on his vehicle. Response, Ex. 1, p. 16. The OCCA rejected this claim, finding:

> The evidence about the drug dog alerting to [Petitioner's] truck came up during testimony by Deputy Paul Fox about where [Petitioner] lived. There was no plain error in the admission of this evidence, particularly since Fox noted that no drugs were found in the truck.

16

Response, Ex. 3, p. 3. This finding by the OCCA is neither contrary to nor an unreasonable application of any federal law. To the extent such evidence was erroneously admitted, Petitioner has wholly failed to demonstrate that such error was so prejudicial as to render his trial fundamentally unfair. Given the previously noted substantial evidence of Petitioner's possession of illegal drugs with the intent to distribute, this reference to a traffic stop where no drugs were found was not so grossly prejudicial as to violate due process. Petitioner is not entitled to habeas relief based on this claim.

Petitioner also contends that prejudicial, improper evidence of other drug charges, arrests, and missed court appearances was elicited by the prosecutor's cross-examination of Petitioner during the second-stage of the trial and that the prosecutor made improper, prejudicial comments during final closing argument, calling him a "habitual offender" and suggesting that Petitioner's liver disease could have been caused by methamphetamine use.[8] Response, Ex. 1, pp. 15-18. In rejecting this claim, the OCCA made the following findings:

> There was no objection to this questioning, and it could not have affected Martin's convictions, since the jury had already convicted him. Similarly, the description of Martin as a "habitual criminal" and the comment that his liver condition could have been caused by his own methamphetamine use--during the prosecutor's final, second-stage closing arguments–could not possibly have affected Martin's convictions. Furthermore, the remarks were permissible commentary on the evidence presented and the arguments of defense counsel. There was no plain error.

---

[8]During second stage of trial Petitioner testified during direct examination that he had been diagnosed with Stage Four Cirrhosis of the liver and that he was taking medications for the disease. Tr.Vol.II, p. 130.

Response, Ex. 3, p. 4.

The undersigned agrees that such evidence, presented in the second stage of trial, could not have influenced the jury's finding of guilt. Moreover, given the unchallenged evidence of Petitioner's five prior convictions, which included one conviction for felon in possession of a firearm and four convictions involving possession and/or distribution of drugs, Petitioner cannot demonstrate that the challenged questions and/or comments were so prejudicial as to result in unreasonably harsh sentences. Under these circumstances, the undersigned finds that Petitioner has failed to show that the admission of such evidence rendered his trial fundamentally unfair.

In sum, the undersigned finds that Petitioner has failed to show that the admission of other crimes evidence violated his right to due process. Accordingly, the OCCA's rejection of this claim on direct appeal was neither contrary to nor an unreasonable application of Supreme Court law. Petitioner is not entitled to habeas relief on this claim.

### D.  Ineffective Assistance of Trial Counsel - Ground Four

In Ground Four, Petitioner raises three claims of ineffective assistance of trial counsel. Petition, p. 9. Petitioner argues that trial counsel was ineffective because he "failed to object to other crimes evidence, prosecutorial misconduct, [and] prejudicial witness testimony[.]" Petition, p. 9.[9] Citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the OCCA

---

[9]Petitioner also alleges in Ground Four that trial counsel "failed to call witnesses that would have provided evidence to the jury that Petitioner could not have commit[t]ed the crime or had any knowledge of the items found in the house." Petition, p. 9. Petitioner did not assert this particular

(continued...)

rejected Petitioner's claim of ineffective assistance of trial counsel on direct appeal, finding

that Petitioner failed to show prejudice:

> It should be noted that defense counsel's main focus at trial was attempting to undermine the State's overall case, by challenging the State's evidence that Martin lived at 1304½ South Fern Street. FN7 And counsel's efforts in this regard were reasonable and persistent. While defense counsel may have failed to challenge some testimony that was objectionable and stumbled on some basic trial techniques, [Petitioner] utterly fails to establish that he was prejudiced thereby.
>
> > FN 7 Defense counsel maintained throughout trial that the house was the home of Martin's step-son and that Martin had simply gone by to feed the cat.

Response, Ex. 3, pp. 4-5.

To succeed on his claim that his attorney provided constitutionally ineffective

assistance, Petitioner must show deficient performance on the part of his attorney and

prejudice resulting from that deficiency, meaning a substantial likelihood that absent such

deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S.

687. *See Knowles v. Mirzayance*, __U.S.__, 129 S.Ct. 1411, 1420 (2009) ("because the

*Strickland* standard is a general standard, a state court has even more latitude to reasonably

---

[9](...continued)
claim of ineffective assistance of trial counsel on direct appeal. *See* Response, Ex. 1, pp. 20-24. Rather, in his post-conviction proceeding Petitioner claimed ineffective assistance of appellate counsel based on appellate counsel's failure to raise trial counsel's ineffectiveness for failing to call certain witnesses on his behalf. Response, Exs. 4 and 5. Thus, to the extent Petitioner attempts to raise this particular ineffective assistance of trial counsel claim as an independent claim, such claim is unexhausted and would subject the petition to dismissal as mixed petition. Therefore, the Court liberally construes the petition as raising the same claim of ineffective assistance of appellate counsel that Petitioner raised in post-conviction proceedings, and because the OCCA addressed this claim on the merits, such claim has been addressed *infra* in Ground Five.

determine that a defendant has not satisfied that standard") (citation omitted). In *Harrington v. Richter*, __U.S.__, 131 S.Ct. 770, 788 (2011), the Supreme Court recently stated "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is 'doubly' so." Because the OCCA adjudicated Petitioner's ineffective assistance of counsel claims on the merits, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1. Failure to object to other crimes evidence

Petitioner alleges that trial counsel was ineffective for failing to object to "other crimes evidence." Petition, p. 9. Although again Petitioner fails to identify the evidence which counsel should have challenged, on direct appeal, Petitioner argued that trial counsel should have objected to the admission of the other crimes evidence discussed in relation to Ground Three, *supra:* evidence of morphine pills, evidence of an earlier traffic stop and drug dog alert, the prosecutor's cross-examination of Petitioner, and the prosecutor's comments during closing argument describing Petitioner as a career criminal and tying his medical condition to his drug use. The OCCA rejected this claim on direct appeal, reasoning that because Petitioner had failed to show that he was entitled to relief on his substantive claim regarding other crimes evidence, he "was not prejudiced by any improper 'other crimes' evidence[.]" Response, Ex. 3, p. 5 n.9.

Likewise, the undersigned has determined in connection with Petitioner's claim in Ground Three that the admission of other crimes evidence did not violate Petitioner's right

to due process.  Petitioner has therefore failed to establish either deficient performance by trial counsel or prejudice resulting from the admission of this evidence.  Accordingly, Petitioner fails to meet the *Strickland* standard, and the OCCA's rejection of his claim of ineffective assistance of trial counsel is neither contrary to nor an unreasonable application of *Strickland*.

### 2.  Failure to object to prosecutorial misconduct

The petition does not identify the prosecutorial misconduct to which trial counsel allegedly failed to object.  His habeas claim has, however, been broadly construed to raise the argument made on direct appeal that counsel should have objected when the prosecutor offered his personal opinion during closing argument that Petitioner had been proven guilty, and made comments not supported by the record.  Response, Ex. 1, pp. 20-21 (citing Tr.Vol.II, pp. 110, 111-12, 113, 114, 116).

The OCCA found that "the cited remarks of the prosecutor that he had 'proven his case' were not improper expressions of personal opinion."  Response, Ex. 3. p. 5 n.9.  The undersigned agrees and finds further that such statements largely reiterated the State's burden to prove the elements of each offense and were fair comments on the evidence.  Finally, as discussed in connection with Ground Two, there was strong evidence of Petitioner's guilt, and Petitioner has not shown any prejudice resulted from trial counsel's failure to object to such statements by the prosecutor.

### 3.  Failure to object to witness testimony

Petitioner also alleges that counsel failed to object to "prejudicial witness testimony."

Petition, p. 9.  On direct appeal, Petitioner argued that "[t]rial counsel failed to object when Deputies Nixon and Fox gave their opinions that Petitioner lived at the house which was searched." Response, Ex. 1, p. 20.  On appeal, the OCCA addressed and rejected Petitioner's claim, finding that Petitioner failed to show that "the lay testimony of the detectives about where they believed [Petitioner] lived was improper . . . ."[10]  Response, Ex. 3, p. 5 n.9.

The OCCA's decision with respect to this claim was not unreasonable.  The State's burden was to prove to the jury beyond a reasonable doubt that Petitioner was in possession and control of the illegal drugs and paraphernalia found in the house.  At trial, Petitioner's counsel attempted to show that the residence where the illegal drugs were found belonged to Petitioner's  stepson and that Petitioner was only there to take care of the cat.  Deputy Nixon and Deputy Fox each testified that in his opinion Petitioner was living at the residence at 1304½ South Fern at the time the search warrant was executed.  Such testimony was properly admitted under Oklahoma law.[11]  Moreover, the opinion testimony by the officers was entirely corroborated by other evidence and did not usurp the fact-finding process of the jury.  Petitioner makes no showing that counsel's failure to object to the detectives'

---

[10]The actual statement by the OCCA was: "Martin fails to show that the lay testimony of the detectives about where they believed Martin lived was not improper . . . ." Response, Ex. 3, p. 5 n.9.  Such statement is clearly a misstatement of the Court's finding that Petitioner had failed to show that such testimony was improper rather than **not** improper.

[11]Under Oklahoma law, lay opinion testimony is permissible when it is rationally based upon the witness's perception, helpful to the jury and not based upon "scientific, technical or other specialized knowledge." Okla. Stat. tit. 12, § 2701 (Supp. 2002).  Additionally, as relevant to this case, "[p]olice officers are allowed to give opinion testimony based on their training and experience." *Andrew v. State*, 164 P.3d 176, 196 (Okla. Crim. App. 2007).

testimony was so grossly prejudicial that it affected the outcome of his trial. Therefore, Petitioner is not entitled to habeas relief as to this claim.

To summarize, the undersigned finds that the OCCA's adjudication of Petitioner's claims of ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, the Supreme Court's decision in *Strickland v. Washington*, *supra*. Petitioner is therefore not entitled to habeas relief in Ground Four.

### E.  Ineffective Assistance of Appellate Counsel - Ground Five

In his final ground for relief, Petitioner alleges that he was denied effective assistance of appellate counsel because appellate counsel failed to raise trial counsel's failure to call two witnesses, Rebecca Martin and Christine Martin, to testify on Petitioner's behalf. Petition, p. 10A.[12]

Respondent contends that the OCCA addressed the merits of Petitioner's claim of ineffective assistance of appellate counsel, and therefore habeas review of this claim must be afforded the deference required by 28 U.S.C. §§ 2254(d)(1), (2). Response, p. 31. The undersigned agrees that the OCCA's decision constituted an "adjudication on the merits" and the AEDPA deferential review applies to Petitioner's ineffective assistance of appellate

---

[12]In his post-conviction appeal, Petitioner alleged appellate counsel was ineffective for failing to challenge the sentence imposed as excessive. Response, Ex. 5 (Proposition II). Respondent has interpreted the petition as raising this claim and has addressed the merits of such claim. Response, pp. 30, 32-34. However, even under a liberal reading of the petition, the undersigned finds that Petitioner has not alleged that appellate counsel was ineffective for failing to challenge the sentences imposed. It is therefore unnecessary to address the merits of such claim.

counsel claim.[13]  As stated previously, the "highly deferential" § 2254(d) standard is "doubly

so" when applied to ineffective assistance of counsel claims.  *Harrington v. Richter*, 131

S.Ct. at 788 (quotations omitted).

To show ineffective assistance of appellate counsel, Petitioner must satisfy the

familiar two-part test for ineffective assistance established in *Strickland v. Washington*, 466

U.S. 668, 688 (1984).   Under *Strickland*, Petitioner "must establish that (1) counsel's

performance fell below an objective standard of reasonableness and (2) there is a reasonable

probability that, but for counsel's errors, the outcome of the proceedings would have been

different."  *Hain v. Gibson*, 287 F.3d 1224, 1231 (10th Cir. 2002).  Application of *Strickland*

to an ineffective assistance of appellate counsel claim requires the Court to "look to the

merits of the omitted issue."  *Id.*  As the Tenth Circuit has explained:

> [I]n analyzing an appellate ineffectiveness claim based upon the failure to raise
> an issue on appeal, "we look to the merits of the omitted issue," generally in
> relation to the other arguments counsel did pursue. If the omitted issue is so
> plainly meritorious that it would have been unreasonable to winnow it out even
> from an otherwise strong appeal, its omission may directly establish deficient
> performance; if the omitted issue has merit but is not so compelling, the case
> for deficient performance is more complicated, requiring an assessment of the
> issue relative to the rest of the appeal, and deferential consideration must be
> given to any professional judgment involved in its omission; of course, if the
> issue is meritless, its omission will not constitute deficient performance.

*Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting  *Neill v. Gibson*, 278 F.3d

---

[13]In its order affirming the denial of Petitioner's application for post-conviction relief, the
OCCA found that the district court had applied the standard set forth in *Strickland v. Washington*,
466 U.S. 668 (1984) and had found that appellate counsel's performance was "not shown deficient
and not shown to have prejudiced [Petitioner]."  Response, Ex. 6, pp. 1-2.  In affirming the district
court's conclusion in this regard, the OCCA concluded that "the record does not support this claim."
*Id.*, p. 2.

1044, 1057 (10th Cir. 2001)); *accord Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (citations omitted). Unless there is a reasonable probability that the omitted claim would have resulted in Petitioner obtaining relief on appeal, there is no ineffective assistance of appellate counsel under the Sixth Amendment. *Neill*, 278 F.3d at 1057 n.5.

To substantiate his underlying claim of ineffective assistance of trial counsel, Petitioner refers to "attached notarized statements" which would show "that there is a serious doubt about the Petitioner's knowledge of anything." Petition, p. 9. Affidavits of Rebecca Martin, Petitioner's wife, and Christine Martin, his daughter, state that at the time of his arrest in September of 2006, Petitioner was living in Guthrie, Oklahoma, and that they both informed Petitioner's trial counsel that they would testify to that fact. Petition, Attached Affidavits.[14] According to Petitioner, had trial counsel called these two witnesses, "the facts concerning whether or not Petitioner lived at the house where he was arrested would have been in question, thereby making the outcome of the trial different." Petition, p. 10-A.

Petitioner fails to show that he was prejudiced by trial counsel's failure to call Rebecca and Christine Martin as witnesses. Petitioner presented evidence that he did not reside at 1304½ South Fern through his own testimony. Specifically, Petitioner testified that the home belonged to his stepson, and Petitioner stayed there only on occasion when he had an early doctor's appointment. Tr.Vol.II, pp. 131-32.

_____

[14]These affidavits are actually attached as exhibits to Petitioner's Application for Post-Conviction Relief which is attached as an exhibit to the petition. A subsequent affidavit dated April 13, 2009, containing additional sworn testimony by Petitioner's wife, Rebecca Martin, is attached as an exhibit to the petition. However, her testimony in this second affidavit does not address the issue of Petitioner's residence.

Even assuming, as Petitioner contends, that the testimony from these two witnesses would have placed in "question" whether Petitioner resided at 1304½ South Fern, Petitioner has not shown that such testimony would have resulted in a different jury verdict. The possibility of raising a "question" is far different from a reasonable probability that the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Petitioner has not demonstrated that his trial counsel's performance was deficient for failure to call his wife and daughter as witnesses, nor has he demonstrated that he suffered any prejudice as a result of the omission of their testimony.

Judicial scrutiny of a lawyer's performance must be highly deferential, and courts assessing counsel's performance generally presume that decisions at trial fall within "the 'wide range' of reasonable professional assistance." *Richter*, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). "The law does not require counsel to raise every available nonfrivolous defense." *Knowles v. Mirzayance*, 129 S.Ct. at 1422. Because Petitioner's underlying claim of trial counsel's ineffective assistance has no merit, there is no reasonable probability that the outcome of his direct appeal would have been different had appellate counsel raised this issue. Therefore, the undersigned finds that the OCCA's resolution of Petitioner's ineffective assistance of appellate counsel claim was not "contrary to, or [did not] involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d). Petitioner is therefore not entitled to habeas relief on his claim of ineffective assistance of appellate counsel.

### RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation in accordance with Fed. R. Civ. P. 72(b)(2). Any such objection must be filed with the Clerk of this Court by the 8th day of May, 2011. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 19th day of May, 2011.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE